Deaderiok, J.,
delivered the opinion of the court.
The complainant’s intestate, Ragan, as a creditor of the defendant, W. H. Simmons, filed his bill in the chancery court at Trenton on the 22d of December,. 1860, to set aside several conveyances alleged in the bill to have been made by Simmons to hinder and delay his creditors.
In the progress of the ease, Ragan died, and the case was revived in the name of the complainant, Hartfield, as his administrator. The contest has been narrowed to the consideration of one only of three *254 conveyances impeached in the. bill, — that one being a conveyance of about one hundred acres of land to the defendant, Frances Simmons, the mother of W. H. Simmons, bearing date December 19, 1860, and registered December 20, 1860.
The consideration expressed on the face of said deed is two land warrants, of eighty acres each, both together worth, as the proof showp, from $160 to $200. The value of the land at the time of the conveyance is shown to have been -from $1,500 to $2,000.
The defendant, in his answer, and in his deposition, states that in 1856 or 1857 he had agreed with his mother to sell her the land for the two warrants, and had made a deed for it, which was, as he thinks, signed by one attending witness, now dead. He states that his mother was then about sixty-five years of age, and that she and her two daughters lived with him on the place. That at the time of the .execution of the deed, in 1860, he had just returned from Memphis to Gibson County, and found that his partner had made an assignment, and that his creditors and endorsers were clamorous to be secured, and were threatening to attach his property if he did not provide for their security. Under this pressure, he made a deed ■of trust, which quieted those of his creditors who were then urging their claims; and conveyed to his mother a little negro of two years of age for the consideration of $150, paid, as recited in the bill of sale, in care and attention bestowed on other slaves of the vendor; and also conveyed to his mother the tract of one hundred acres of land already referred to.
*255 There is no evidence showing the execution of a fleed in 1856 or 1857, except that of the defendant, W. H. Simmons, himself; and, according to his statement, it was attested by but one witness, and could not, therefore, have been admitted to registration, without another witness, or on his acknowledgement.
This deed is not produced, nor is its loss accounted for; nor does the deed of 1860 recite the execution ■of any previous conveyance. But it is insisted that at the time it was executed, the defendant, W. H. Simmons, was not in embarrassed circumstances, and that, although the consideration was grossly inadequate, the conveyance was not fraudulent.
If not in fact fraudulent, the transaction was of such unusual character as to excite strong suspicion that the land warrants were not in fact paid for the land; or, if so paid, that this was for the purpose of placing the title to this tract of land in the mother, so that he, W. H. Simmons, might have the use and enjoyment of it, beyond the reach of his creditors.
The proof shows that W. Ii. Simmons continued to control and manage the land after, as before, the time of the alleged conveyance of 1856 or 1857; and, in his testimony, he states that sometime after the filing of the bill in this case, when his mother had removed from the place, leaving him there alone, he had agreed to pay her about $100 a year rent.
"We have a strong suspicion, from the proof, that W. H. Simmons used his aged mother as an instrument to perpetrate a fraud upon his creditors. To take care of her, as he professed to have desired to *256 do, it was not necessary that he should convey to. her the land in controversy. For such a purpose, it was hardly natural or probable that he should do so, as, at her advanced age, he could have provided for her quite as efficiently by retaining the property in himself.
His sister states that the land warrants were given to him for the land; but she has no recollection of the execution of any deed at the time they were assigned : but from her testimony it may be true that the land warrants were paid to W. H. Simmons by his mother for the land.
But the land was sold at a price grossly inadequate, as we think, from the proof, it was worth at the time of the sale $1,500 to $2,000; and there are other circumstances of suspicion attending the transaction, which would make it inequitable, and unjust to the creditors of W. H. Simmons, to uphold the conveyance to his mother. Alley v. Connell, 3 Head, 578.
The sale will be set aside; and allowing $200, the amount for which the land warrants were sold, as a lien upon the land, it will be sold for the satisfaction of the complainant’s debt. No interest will be allowed upon the $200, as the land was occupied by Mrs. Simmons, with her son; and he stated that he had paid her rent after her removal therefrom.
The Chancellor’s decree will be reversed, and a decree rendered in conformity with this opinion.
W. H. Simmons having been discharged in bankruptcy, the costs will be paid out of the proceeds of the sale.